1

2  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
3  ------------------------------------X

4  KAMARLEY DORRELL and NAGIE NADEL,

5                          Plaintiffs,

6
                  -against-
7

8  NASSAU COUNTY, ALL COUNTY TOWING &
   AUTOBODY, INC., and NASSAU COUNTY
9  POLICE DEPARTMENT,

10                         Defendants.

11  Docket No.:  2:23-CV-08471

12  ------------------------------------X

13                          VIA VIDEOCONFERENCE

14                          September 11, 204
                            1:52 p.m.
15

16  DEPOSITION of NAGIE NADEL, the Plaintiff

17  herein, taken by the respective parties,

18  pursuant to Article 31 of the Civil Practice

19  Law and Rules of Testimony, and Court Order,

20  held at the above-mentioned time and place,

21  before Lisa Y. Ramirez, a Notary Public of the

22  State of New York.

23
                          ORIGINAL
24

25

```
 1

 2        A P P E A R A N C E S:

 3        NAGIE NADEL, PLAINTIFF, pro se

 4

 5        QUATELA CHIMERI PLLC
                Attorneys for Defendant ALL COUNTY
                TOWING
 6              320 Old Country Road, Suite 206
                Garden City, New York 11530
 7        BY:  ALEX SENDROWITZ, ESQ.

 8

 9        OFFICE OF THE NASSAU COUNTY ATTORNEY
                Attorney for Defendants Nassau County and
                Nassau County Police Department
10              1 West Street
                Mineola, New York 11501
11        BY:  IAN BERGSTROM, ESQ.

12

13        ******

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1

2                    F E D E R A L   S T I P U L A T I O N S


3

         IT IS HEREBY STIPULATED AND AGREED by and
4    between the attorneys for the respective
     parties, that filing, sealing and
5    certification, and the same are, hereby
     waived.
6
         IT IS FURTHER STIPULATED AND AGREED that
7    all objections except as to the form of the
     question, shall be reserved to the time of the
8    trial.

9        IT IS FURTHER STIPULATED AND AGREED that
     the within deposition may be signed and sworn
10   to by an officer authorized to administer an
     oath, with the same force and effect as if
11   signed and sworn to before the Court.

12
                        *   *   *
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1
2          N A G I E   N A D E L, the Witness herein,
3     having been first duly sworn by a Notary Public
4     in and of the State of New York, was examined
5     and testified as follows:
6       EXAMINATION BY
7       MR. BERGSTROM:
8               THE REPORTER:  Please state your
9               full name for the record.
10              THE WITNESS:  Nagie Nadel.
11              THE REPORTER:  Please state your
12              current address for the record.
13              THE WITNESS:  I don't have an
14              address.
15              MR. BERGSTROM:  Good afternoon,
16              Ms. Nadel.  My name is Ian Bergstrom.
17              I'm the attorney for the co-defendants,
18              Nassau County and Nassau County Police
19              Department.
20                  As I previously discussed with
21              Mr. Dorrell, please ensure that the
22              responses are verbal rather than
23              non-verbal to allow the stenographer to
24              transcribe all statements and questions
25              during your deposition.  If you do not
```

NAGIE NADEL

        understand a question, please let me know

        and I will rephrase.  If you want to

        speak with an attorney, you are

        encouraged to do so protecting your legal

        rights herein.

            Any questions.

            THE WITNESS:  No.

    Q.   What is the nature of your claims

against Nassau County and Nassau County Police

Department?

    A.   Can you explain what you mean by

"nature"?

    Q.   Why are you suing Nassau County and

Nassau County Police Department as a

co-plaintiff?

    A.   I feel that I should have been

disclosed with the information that I

requested in the first hand, the public

information, and my personal property was

wrongfully seized.

    Q.   Are you referring to the Freedom of

Information Law request that was sent to the

Nassau County Police Department?

    A.   Well, isn't that public information?

NAGIE NADEL

Q.   It's referred to as public information
but the terminology in New York state is FOIL,
and FOIL stands for Freedom of Information
Law.

A.   So the public information, yeah,
that's what I'm referring to.

Q.   So one of your claims pertains to the
alleged lack of responsiveness pertaining to
the public information request?

A.   And then also the procedure of it.

Q.   We were discussing the Freedom of
Information Law or public information request
at Nassau County Police Department, and I said
something along the lines of the lack of
responsive and you proceeded to answer
accordingly.  I'm asking you to repeat what
you were saying because the microphone was
mumbled.

A.   Yeah.  I was requesting the officer's
information and the body worn camera and dash
cam video.

Q.   You and Mr. Dorrell did receive the
body camera footage as a result of discovery,
correct?

1

2     A.   Only after commencing the lawsuit is

3    when we received disclosers, but before that

4    didn't receive anything based on my request.

5     Q.   Do you believe that your

6    constitutional rights were violated regarding

7    the scooter being taken?

8     A.   Yes.

9     Q.   Do you agree with Mr. Dorrell that a

10   driver's license, registration, insurance,

11   etc., is not necessary to travel by means of a

12   scooter unless engaged in commerce?

13    A.   Yes.

14    Q.   Do you believe that the vehicle and

15   traffic law does not apply to you and

16   Mr. Dorrell because you were not engaged in

17   commerce regarding the traveling by means of

18   scooter?

19    A.   Can you repeat that one more time?

20    Q.   Do you agree with Mr. Dorrell that a

21   driver's license, registration, insurance, is

22   not necessary unless engaged in commerce?

23    A.   Yes.

24    Q.   Do you believe that the vehicle and

25   traffic law is not applicable to the scooter

1

2 because Mr. Dorrell was not engaged in

3 commerce?

4     A.   Yes.

5     Q.   Do you remember the purchase price of

6 the scooter?

7     A.   I don't remember.

8     Q.   Do you know or remember the identity

9 of the individual that the scooter was

10 acquired from?

11     A.   I wasn't there but I gave Mr. Dorrell

12 money to pick up.

13     Q.   Do you remember how much money you

14 provided Mr. Dorrell?

15     A.   Well, the same day I gave him over

16 $500 dollars, and he also paid for it too.

17     Q.   Do you know whether the scooter was

18 found by means of Facebook Market?

19     A.   It was -- we looked on multiple sites,

20 so I can't recall.

21     Q.   Earlier today an account was mentioned

22 to facilitate the purchase of A scooter.  Are

23 you familiar with any internet account used to

24 purchase the vehicle?

25     A.   I just know we looked online.

1

2     Q.   You believe that the scooter was

3     stolen from the possession of yourself and

4     Mr. Dorrell?

5     A.   Yes.

6          MR. BERGSTROM:  Mr. Sendrowitz, do

7       you have any follow up questions?

8          MR. SENDROWITZ:  Yes, I have a few.

9     EXAMINATION BY

10    MR. SENDROWITZ:

11    Q.   Good afternoon, Ms. Nadel.  As you

12    heard, and as you know, my name is Alex

13    Sendrowitz and I represent All County Towing.

14    I just want to have a kind of a better

15    understanding of the position that you only

16    need a license if you're engaged in some type

17    of commerce so I'm going to give you a

18    hypothetical and I'd like you to respond.

19         If I am driving my car from my house

20    to the beach for personal time, I don't need a

21    license or have to have my vehicle registered

22    for that purpose?

23    A.   Well, if you say you're driving, I

24    don't understand why you would take your

25    personal needs into driving.

1

2      Q.    Well, you're indicating, if I

3    understand correctly, that you only need a

4    license, or to have a vehicle registered, if

5    you're engaged in some type of commerce,

6    correct?

7      A.    Yes.

8      Q.    Can you give me an example of what

9    that would be?

10      A.    Well, based off what you said, if you

11    said that you're personally driving from your

12    home to the beach, I don't understand why you

13    would be driving, like, you would take your

14    personal matters into commerce.  I don't

15    understand why you would do that.

16      Q.    Maybe I'm confused about what you mean

17    "into commerce."  So can you give me an

18    example of when you would need a license or to

19    have a vehicle registered?

20      A.    If I'm making a profit, 'cause you're

21    saying that you will make a profit going from

22    your home to the beach, or it is just

23    something personal for your own enjoyment?

24      Q.    For my own enjoyment.  I was trying to

25    give hypotheticals for the distinction between

operating a vehicle for the purposes of
commerce versus something else.  So in my
example I was just going to the beach.  I
certainly wasn't going to be making a profit.
I was just driving or traveling to the beach.
So --

    A.   If you're traveling to the beach then
I don't believe you need a license to travel
to the beach for your own needs.

    Q.   So would you consider me driving to
the beach operating the vehicle or you
wouldn't consider it that?

    A.   I wouldn't consider it that.

    Q.   What would you consider it?

    A.   I would consider it you driving for
your own enjoyment.

    Q.   But the actual act of physically
driving my car to the beach, what would you
consider that?

    A.   Are you trying to gain a profit off of
that?

    Q.   No.

    A.   Again, I don't know why you would take
your personal enjoyment into commerce.

NAGIE NADEL

Q.   It has nothing to do with commerce.
I'm just going to the beach, but I'm driving
my car to the beach.

A.   That's doesn't make any sense to me,
drive to the beach for your own enjoyment.

Q.   So if I want to go to the beach and I
can't walk there, I have to drive my car to
get there; you understand that part?

A.   You could travel by car.

Q.   So you believe that there is a
distinction between the word "driving" and the
word "traveling" by car?

A.   Yes.

Q.   Do you think that there's a
distinction in the act of propelling the car?

A.   What do you mean by propelling?

Q.   So whether I'm driving to the beach
for my own personal use that you're going to
use the verbiage of "travel" versus whether
I'm driving to the beach for the purposes of
engaging in some type of commerce, would you
agree that I still have the vehicle on New
York State roads?

A.   Well if you're traveling, that's your

1

2 right to travel on the land, but if you're

3 driving then you're going to be driving under

4 the jurisdiction of New York State.

5     Q.   Where do you get this?  What's the

6 source of law that dictates between traveling

7 with the definition versus driving?  Where did

8 you learn that?

9     A.   Public information.

10     Q.   Can you give me a specific statute or

11 body of law that differentiates the two?

12     A.   I believe everything was disclosed in

13 the Complaint.  As far as the laws, I can't

14 pull them up right now.

15     Q.   I'm asking, as you're sitting here

16 today not looking at the complaint to refresh

17 your recollection, do you know of any body of

18 law that gives distinction in the State of New

19 York of what your claims are?

20     A.   Yes, but I don't want to say -- I

21 don't want to misguide you 'cause I don't have

22 the direct quoting in front of me.

23     Q.   So that's the distinction, whether I'm

24 driving to the beach, notwithstanding the fact

25 that my vehicle is still on the road, I only

    have to have a license and that vehicle

    registered based upon my intent, correct?

        A.   If you're intending to make a profit,

    then yeah, you would need a license, but if

    you're intending to enjoy yourself at the

    beach and it's personal, then you don't need a

    license to travel.

        Q.   And you believe that that is the New

    York State law?

        A.   Yes.

        Q.   I'm going to ask that we leave a blank

    in the transcript and, if you can, put the

    specific New York State law on it when you

    receive the transcript back, I would

    appreciate that.

    INSERT:_____

    _____

        A.   That would be for driving.

        Q.   I'm going to ask you to reference the

    specific statute or body of law in that blank

    spot from what we had just discussed and what

    you just testified.

        A.   Blank spot?

        Q.   When you receive the transcript back

to review --

    A.   Like, you want me to personally write it in?

    Q.   That's correct, I do, yes.

    A.   I don't know if that's against what you guys requested because you guys said keep all answers verbal, so.

    Q.   You're indicating right now that you don't know, and if you could tell me that would be great, but if you don't know then I'm going ask you to write it in on the blank.

    A.   Write it in on the blank, okay.

    Q.   So Mr. Dorrell had indicated that the scooter was purchased through Facebook Marketplace.  Do you have a Facebook account?

    A.   No.

    Q.   Have you ever had a Facebook account?

    A.   How is that relevant to this matter?

    Q.   It's relevant because Mr. Dorrell had indicated that the vehicle was purchased through Facebook, so it's highly relevant.

    A.   I guess if you want to say it's a shared account then that could be it, but we looked on multiple sites.

Q.   Well Mr. Dorrell testified that it was
purchased through Facebook Marketplace, so I
understand that you may have looked through
it.  Are you indicating that Mr. Dorrell's
testimony is inaccurate?

A.   It might have been through Facebook,
and it might have been through another site.

Q.   What other site would it have been
through?

A.   Like any marketplace, like, any app
that you can sell items.

Q.   Can you give some examples?

A.   Like a OfferUp or a eBay it could have
been.  We looked on a lot of websites.

Q.   So your testimony is that
Mr. Dorrell's testimony that it was purchased
through Facebook Marketplace is inaccurate?

A.   Well he was the main one that was
looking.  I just (inaudible) might be
accurate.

Q.   Okay.  So you don't know where it was
purchased from?

A.   I don't remember.  All I remember was
giving money.

Q.    Did Mr. Dorrell tell you how much the
scooter cost?

A.    I don't remember.

Q.    How do you remember that you gave him
$500?

A.    I remember that I gave him $500, well,
over $500 actually because I counted over
$500.

Q.    And did you or Mr. Dorrell receive
some type of receipt for this purchase?

A.    I wasn't there.

Q.    Do you know if Mr. Dorrell received a
receipt?

A.    I remember he said that he received a
title, which is the manufacturers certificate.

Q.    Which question is, do you know if he
received a receipt?

A.    I don't remember anything about a
receipt.

Q.    When you had indicated that you have
no address, what do you mean by that?

A.    You're talking about residential?

Q.    Yes.  Where do you reside?

A.    Yeah.  I have no address.

Q.   So you don't receive any mail?

A.   I have a mailing address on file,
that's about it, and it's not exactly
reliable.

Q.   What do you mean that it's not
reliable?

A.   It's not every time I could go and
access the mail.  That's why we have
electronic notices.

Q.   Mr. Dorrell had indicated you're not
in the State of New York right now.

A.   No.

Q.   And you're unwilling to disclose where
you are taking this deposition?

A.   I don't feel safe.

Q.   When you say "you don't feel safe,"
what do you think is going to happen if you
disclose what state you're in?

A.   What do you mean by state?

Q.   When I imagine you're in some state in
the United States, correct?

A.   I don't know.  I don't feel disclosing
exactly where I am being that my property was
stolen.

Q.   You don't feel safe disclosing what
state you're in?

A.   Disclosing where I am.

Q.   I'm asking what state you're in.

A.   I don't think that's relevant.

Q.   I understand that you don't believe
certain things are relevant, but you have to
understand that you started a federal lawsuit
suing my client and the County for
$10,000,000, so we have a wide berth of what
we're able to ask with regard to certain
discovery, and relevance is not a valid
objection to not answer a question.

I understand that you don't believe
something is relevant, and that objection is
noted for the record, but I would like to at
least have an understanding.  We agreed to do
these depositions virtually and I think it's
fair to at least know what state you're in.

A.   I don't feel safe disclosing where I
am.

Q.   When did you purchase the scooter?

A.   Somewhere in between last year and the
incident that occurred.

1

2      Q.   Do you have a general understanding of

3 what month you purchased this?

4      A.   I don't remember.  I just know it was

5 sometime between the year 2023 and the

6 incident.

7      Q.   How long were you looking for a

8 scooter prior to the purchase?

9      A.   Well, we looked for a lot of things.

10      Q.   I'm asking how long you looked for the

11 scooter before you made the purchase?

12      A.   I don't remember.

13      Q.   Was it a couple of weeks?  Was it a

14 couple of months?

15      A.   I don't remember, specifically.

16      Q.   Did you look for a long time or a

17 short time?

18      A.   I don't remember.

19      Q.   Was it winter when you made the

20 purchase?

21      A.   Well I was inside.  He went there and

22 got it.

23      Q.   Where did he go?

24      A.   I don't remember.

25      Q.   Did you ever know or you just don't

1

2      know?

3            A.   I was just excited for the bike.

4            Q.   Did you ever know where he was going

5      to retrieve the bike?

6            A.   No.  I just wanted to see it.

7            Q.   So the answer is no?

8            A.   If I know where he went?

9            Q.   Yes, where he went to retrieve the

10     bike.

11           A.   I don't know about that.

12           Q.   Do you know if he walked to go there?

13           A.   I don't know what route he took to get

14     it.  I just wanted to see it.

15           Q.   Did he walk or drive?  I'm trying to

16     get an understanding of time it was when this

17     was purchased, that's my --

18           A.   I don't know, sir.

19           Q.   I understand.  So I'm trying to ask

20     questions to maybe refresh your recollection,

21     such as it was cold out, it was warm out, he

22     was wearing pants, he was wearing shorts,

23     something to get a general understanding of

24     what time of year it was because we were able

25     to narrow it to about eight months.  So I'm

1

2      just trying to narrow it a little bit further.

3          A.   That's the best I could do.  I really

4      can't give you a straight answer.  I don't

5      want to make anything false.

6          Q.   Now, the Certificate of Origin,

7      Mr. Dorrell testified that both you and he

8      wrote your names as purchaser on the back,

9      correct?

10         A.   Yes.

11         Q.   But the seller, he didn't sign the

12     Certificate of Origin, essentially,

13     consummating the sale, did he?

14         A.   I don't think so.  I'll have to look

15     if his name's on there.  I just know I put my

16     name on there.

17         Q.   Now, do you know if there was ever any

18     attempt to submit the Certificate of Origin in

19     an attempt to get a title?

20         A.   No.

21         Q.   Why not?

22         A.   Well we wanted, like, our property to

23     be for personal use, not for commerce.

24         Q.   So because it wasn't going to be used

25     for commerce then you didn't have to get a

NAGIE NADEL

title?

    A.   No.  That is the title.

    Q.   Well that's the Certificate of Origin.
It's not a title.

       Mr. Dorrell, is he employed?

    A.   Wouldn't that be something for you to
ask him?

    Q.   I'm asking you.  I'm sure you would
have personal knowledge.

    A.   I don't want to answer on his behalf.

    Q.   Is he employed or not?

    A.   I don't think it's appropriate for me
to answer questions on his behalf.

    Q.   I'm not asking you to answer anything
on his behalf.  I'm asking you if you have
personal knowledge as to whether he's employed
or not?

    A.   But that would be me answering on his
behalf.

    Q.   Are you employed?

    A.   No.

    Q.   Has Mr. Dorrell ever rode the scooter
to or from a job?

    A.   That's something that you should've

 1

 2    asked him.

 3         Q.   Okay.  So I'll ask him when we're done

 4    with this.

 5         A.   Okay, no problem.

 6              MR. SENDROWITZ:  I have no more

 7         questions.  Thank you.

 8              MR. BERGSTROM:  Nor do I.  I'm all

 9         set.

10              MR. SENDROWITZ:  I just have one or

11         two questions for Mr. Dorrell as a follow

12         up to this deposition.

13              THE WITNESS:  You want me to go get

14         him now?

15              MR. SENDROWITZ:  If you don't mind.

16    FURTHER EXAMINATION BY

17    MR. SENDROWITZ:

18         Q.   Mr. Dorrell, between the months of

19    January 1, 2023 and August 28, 2023, were you

20    employed?

21         A.   I feel as if that would be irrelevant

22    to this matter.

23         Q.   Did you do anything for profit?

24         A.   I feel like that would be irrelevant

25    to this matter, sir.

1

2    Q.    Well it wouldn't be because you're

3    indicating that the basis for not registering

4    the scooter, getting a title, ensuring it,

5    it's because you weren't doing anything for

6    profit.  You weren't engaged in operating the

7    vehicle for commerce.  So my question is I'm

8    enquiring as to whether you were or you

9    weren't?

10   A.    And my answer would be that it would

11   be irrelevant to this matter.

12   Q.    Do you understand relevancy?  If

13   you're making a certain claim as to why

14   something doesn't apply to you, my questioning

15   and inquiry into that certainly is relevant.

16   A.    When I made the claim, right, my

17   argument was that I was not riding the bike

18   for any form of profit, anything other than

19   that would be irrelevant.

20   Q.    What were you riding the bike for that

21   night?

22   A.    Travel, personal (inaudible).

23   Q.    Where were you traveling to?

24   A.    That would be irrelevant.

25   Q.    Sir, it's not irrelevant.  You're

making a claim that you were not driving the
vehicle for any form of profit. So when I'm
inquiring as to what you were driving it for,
it's certainly a relevant inquiry, so your
objection is misplaced.

A.   And I personally, right, would like to
say that I feel as if the question, right, I
feel that if you're asking about my personal
life outside of this incident, right, would be
irrelevant, sir.

Q.   So you're obstructing this deposition?

A.   I'm not obstructing anything, but if
that's how you feel, then that's how you feel.

MR. SENDROWITZ:  I have nothing
further; however, I will mark this for a
ruling.

(Whereupon, at 2:22 P.M.,
the Examination of this witness
was concluded.)

*  *  *  *  *  *  *

```
 1                        N. Nadel
 2                  D E C L A R A T I O N
 3
 4          I hereby certify that having been first
 5     duly sworn to testify to the truth, I gave the
 6     above testimony.
 7
 8          I FURTHER CERTIFY that the foregoing
 9     transcript is a true and correct transcript of
10     the testimony given by me at the time and
11     place specified hereinbefore.
12
13
14
15                    _____
                              NAGIE NADEL
16
17
18     Subscribed and sworn to before me
19     this _____ day of _____ 20___.
20
21
22     _____
            NOTARY PUBLIC
23
24
25
```

```
1

2                           I N D E X

3

4        EXAMINATION BY:                        PAGE

5        IAN BERGSTROM      NAGIE NADEL        6

6        ALEX SENDROWITZ    KARMARLEY DORRELL    24

7

8

9

10            QUESTIONS MARKED FOR RULINGS

11       PAGE

12       24 - 25   Entire Examination of Mr. Dorrell

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1

2                    C E R T I F I C A T E

3

4          I, LISA Y. RAMIREZ, hereby certify that

5     the Examination of said witness named in the

6     foregoing transcript was held before me at the

7     time and place herein named; that said witness

8     was duly sworn before the commencement of the

9     testimony; that the testimony was taken

10    stenographically by myself and then

11    transcribed under my direction; that the party

12    was represented by counsel as appears herein;

13         That the within transcript is a true

14    record of the Examination of said witness;

15         That I am not connected by blood or

16    marriage with any of the parties; that I am

17    not interested directly or indirectly in the

18    outcome of this matter; that I am not in the

19    employ of any of the counsel.

20         IN WITNESS WHEREOF, I have hereunto set

21    my hand this 3rd day October of, 2024.

22

23              Lisa Y. Ramirez
                Lisa Y. Ramirez

24

25
```

# TOP KEY COURT REPORTING, INC

## ERRATA SHEET

| PAGE | READS | SHOULD READ |
|------|-------|-------------|
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |
|      |       |             |

Signed: _____     Date:_____

| $ | |
|---|---|
| **$10,000,000** [1] - 19:11 | |
| **$500** [5] - 8:16, 17:6, 17:7, 17:8, 17:9 | |

| 1 | |
|---|---|
| **1** [2] - 2:10, 24:19 | |
| **11** [1] - 1:14 | |
| **11501** [1] - 2:10 | |
| **11530** [1] - 2:6 | |
| **1:52** [1] - 1:14 | |

| 2 | |
|---|---|
| **2023** [3] - 20:5, 24:19 | |
| **2024** [1] - 29:22 | |
| **204** [1] - 1:14 | |
| **206** [1] - 2:6 | |
| **20____** [1] - 27:19 | |
| **24** [2] - 28:6, 28:12 | |
| **25** [1] - 28:12 | |
| **28** [1] - 24:19 | |
| **2:22** [1] - 26:18 | |
| **2:23-CV-08471** [1] - 1:11 | |

| 3 | |
|---|---|
| **31** [1] - 1:18 | |
| **320** [1] - 2:6 | |
| **3rd** [1] - 29:22 | |

| 6 | |
|---|---|
| **6** [1] - 28:5 | |

| A | |
|---|---|
| **able** [2] - 19:12, 21:24 | |
| **above-mentioned** [1] - 1:20 | |
| **access** [1] - 18:9 | |
| **accordingly** [1] - 6:17 | |
| **account** [5] - 8:21, 8:23, | |

15:16, 15:18, 15:24
**accurate** [1] - 16:21
**acquired** [1] - 8:10
**act** [2] - 11:18, 12:16
**actual** [1] - 11:18
**address** [5] - 4:12, 4:14, 17:22, 17:25, 18:3
**administer** [1] - 3:10
**afternoon** [2] - 4:15, 9:11
**agree** [3] - 7:9, 7:20, 12:23
**agreed** [1] - 19:18
**AGREED** [3] - 3:3, 3:6, 3:9
**Alex** [1] - 9:12
**ALEX** [2] - 2:7, 28:6
**ALL** [2] - 1:8, 2:5
**alleged** [1] - 6:9
**allow** [1] - 4:23
**AND** [3] - 3:3, 3:6, 3:9
**answer** [8] - 6:16, 19:14, 21:7, 22:4, 23:11, 23:14, 23:15, 25:10
**answering** [1] - 23:19
**answers** [1] - 15:8
**app** [1] - 16:11
**applicable** [1] - 7:25
**apply** [2] - 7:15, 25:14
**appreciate** [1] - 14:16
**appropriate** [1] - 23:13
**argument** [1] - 25:17
**Article** [1] - 1:18
**attempt** [2] - 22:18, 22:19
**attorney** [2] - 4:17, 5:4
**ATTORNEY** [1] - 2:8
**Attorney** [1] - 2:9
**Attorneys** [1] - 2:5
**attorneys** [1] - 3:4
**August** [1] - 24:19
**authorized** [1] - 3:10

**AUTOBODY** [1] - 1:8

| B | |
|---|---|
| **based** [3] - 7:4, 10:10, 14:3 | |
| **basis** [1] - 25:3 | |

**beach** [17] - 9:20, 10:12, 10:22, 11:4, 11:6, 11:8, 11:10, 11:12, 11:19, 12:3, 12:4, 12:6, 12:7, 12:18, 12:21, 13:24, 14:7
**behalf** [4] - 23:11, 23:14, 23:16, 23:20
**Bergstrom** [1] - 4:16
**BERGSTROM** [6] - 2:11, 4:7, 4:15, 9:6, 24:8, 28:5
**berth** [1] - 19:11
**best** [1] - 22:3
**better** [1] - 9:14
**between** [7] - 3:4, 10:25, 12:12, 13:6, 19:24, 20:5, 24:18
**bike** [5] - 21:3, 21:5, 21:10, 25:17, 25:20
**bit** [1] - 22:2
**blank** [5] - 14:12, 14:21, 14:24, 15:12, 15:13
**blood** [1] - 29:16
**body** [5] - 6:21, 6:24, 13:11, 13:17, 14:21
**BY** [6] - 2:7, 2:11, 4:6, 9:9, 24:16, 28:4

| C | |
|---|---|
| **cam** [1] - 6:22 | |
| **camera** [2] - 6:21, 6:24 | |

**car** [7] - 9:19, 11:19, 12:4, 12:8, 12:10, 12:13, 12:16
**certain** [3] - 19:8, 19:12, 25:13
**certainly** [3] - 11:5, 25:15, 26:5
**certificate** [1] - 17:16
**Certificate** [4] - 22:6,

22:12, 22:18, 23:4
**certification** [1] - 3:5
**certify** [2] - 27:4, 29:5
**CERTIFY** [1] - 27:8
**CHIMERI** [1] - 2:4
**City** [1] - 2:6
**Civil** [1] - 1:18
**claim** [3] - 25:13, 25:16, 26:2
**claims** [3] - 5:9, 6:8, 13:19
**client** [1] - 19:10
**co** [2] - 4:17, 5:16
**co-defendants** [1] - 4:17
**co-plaintiff** [1] - 5:16
**cold** [1] - 21:21
**commencement** [1] - 29:9
**commencing** [1] - 7:2
**commerce** [15] - 7:12, 7:17, 7:22, 8:3, 9:17, 10:5, 10:14, 10:17, 11:3, 11:25, 12:2, 12:22, 22:23, 22:25, 25:7
**Complaint** [1] - 13:13
**complaint** [1] - 13:16
**concluded** [1] - 26:20
**confused** [1] - 10:16
**connected** [1] - 29:16
**consider** [6] - 11:11, 11:13, 11:14, 11:15, 11:16, 11:20
**constitutional** [1] - 7:6
**consummating** [1] - 22:13
**correct** [7] - 6:25, 10:6, 14:3, 15:5, 18:22, 22:9, 27:9
**correctly** [1] - 10:3
**cost** [1] - 17:3
**counsel** [2] - 29:13, 29:20
**counted** [1] - 17:8

Country [1] - 2:6
COUNTY [5] - 1:8, 1:8, 2:5, 2:8
County [12] - 2:9, 2:9, 4:18, 5:10, 5:14, 5:15, 5:24, 6:14, 9:13, 19:10
couple [2] - 20:13, 20:14
COURT [1] - 1:2
Court [2] - 1:19, 3:11
current [1] - 4:12

## D

dash [1] - 6:21
Defendant [1] - 2:5
Defendants [2] - 1:10, 2:9
defendants [1] - 4:17
definition [1] - 13:7
Department [6] - 2:9, 4:19, 5:11, 5:15, 5:24, 6:14
DEPARTMENT [1] - 1:9
deposition [5] - 3:9, 4:25, 18:15, 24:12, 26:12
DEPOSITION [1] - 1:16
depositions [1] - 19:19
dictates [1] - 13:6
differentiates [1] - 13:11
direct [1] - 13:22
direction [1] - 29:12
directly [1] - 29:18
disclose [2] - 18:14, 18:19
disclosed [2] - 5:18, 13:12
disclosers [1] - 7:3
disclosing [4] - 18:23, 19:2, 19:4, 19:21
discovery [2] - 6:24, 19:13
discussed [2] - 4:20,

14:22
discussing [1] - 6:12
distinction [5] - 10:25, 12:12, 12:16, 13:18, 13:23
DISTRICT [2] - 1:2, 1:2
Docket [1] - 1:11
dollars [1] - 8:16
done [1] - 24:3
Dorrell [22] - 4:21, 6:23, 7:9, 7:16, 7:20, 8:2, 8:11, 8:14, 9:4, 15:14, 15:20, 16:2, 17:2, 17:10, 17:13, 18:11, 22:7, 23:6, 23:23, 24:11, 24:18, 28:12
DORRELL [2] - 1:4, 28:6
Dorrell's [2] - 16:5, 16:17
drive [3] - 12:6, 12:8, 21:15
driver's [2] - 7:10, 7:21
driving [20] - 9:19, 9:23, 9:25, 10:11, 10:13, 11:6, 11:11, 11:16, 11:19, 12:3, 12:12, 12:18, 12:21, 13:3, 13:7, 13:24, 14:19, 26:2, 26:4
duly [3] - 4:3, 27:5, 29:9
during [1] - 4:25

## E

EASTERN [1] - 1:2
eBay [1] - 16:14
effect [1] - 3:10
eight [1] - 21:25
electronic [1] - 18:10
employ [1] - 29:20
employed [5] - 23:6, 23:12, 23:17, 23:21, 24:20
encouraged [1] - 5:5
engaged [7] - 7:12, 7:16, 7:22, 8:2, 9:16, 10:5, 25:6
engaging [1] - 12:22
enjoy [1] - 14:6
enjoyment [5] - 10:23,

10:24, 11:17, 11:25, 12:6
enquiring [1] - 25:8
ensure [1] - 4:21
ensuring [1] - 25:4
Entire [1] - 28:12
ESQ [2] - 2:7, 2:11
essentially [1] - 22:12
etc [1] - 7:11
exactly [2] - 18:4, 18:24
Examination [4] - 26:19, 28:12, 29:6, 29:15
EXAMINATION [4] - 4:6, 9:9, 24:16, 28:4
examined [1] - 4:4
example [3] - 10:8, 10:18, 11:4
examples [1] - 16:13
except [1] - 3:7
excited [1] - 21:3
explain [1] - 5:12

## F

Facebook [8] - 8:18, 15:15, 15:16, 15:18, 15:22, 16:3, 16:7, 16:18
facilitate [1] - 8:22
fact [1] - 13:24
fair [1] - 19:20
false [1] - 22:5
familiar [1] - 8:23
far [1] - 13:13
federal [1] - 19:9
few [1] - 9:8
file [1] - 18:3
filing [1] - 3:4
first [3] - 4:3, 5:19, 27:4
FOIL [2] - 6:3, 6:4
follow [2] - 9:7, 24:11
follows [1] - 4:5
footage [1] - 6:24
FOR [1] - 28:10

force [1] - 3:10
foregoing [2] - 27:8, 29:7
form [3] - 3:7, 25:18, 26:3
Freedom [3] - 5:22, 6:4, 6:12
front [1] - 13:22
full [1] - 4:9
FURTHER [4] - 3:6, 3:9, 24:16, 27:8

## G

gain [1] - 11:21
Garden [1] - 2:6
general [2] - 20:2, 21:23
given [1] - 27:10
great [1] - 15:11
guess [1] - 15:23
guys [1] - 15:7

## H

hand [2] - 5:19, 29:22
heard [1] - 9:12
held [2] - 1:20, 29:7
HEREBY [1] - 3:3
hereby [3] - 3:5, 27:4, 29:5
herein [5] - 1:17, 4:2, 5:6, 29:8, 29:13
hereinbefore [1] - 27:11
hereunto [1] - 29:21
highly [1] - 15:22
home [2] - 10:12, 10:22
house [1] - 9:19
hypothetical [1] - 9:18
hypotheticals [1] - 10:25

## I

Ian [1] - 4:16
IAN [2] - 2:11, 28:5

identity [1] - 8:8

imagine [1] - 18:21

IN [1] - 29:21

inaccurate [2] - 16:6, 16:18

inaudible [1] - 16:20

inaudible) [1] - 25:22

INC [1] - 1:8

incident [3] - 19:25, 20:6, 26:10

indicated [4] - 15:14, 15:21, 17:21, 18:11

indicating [4] - 10:2, 15:9, 16:5, 25:3

indirectly [1] - 29:18

individual [1] - 8:9

information [9] - 5:18, 5:20, 5:25, 6:2, 6:6, 6:10, 6:13, 6:21, 13:9

Information [3] - 5:23, 6:4, 6:13

inquiring [1] - 26:4

inquiry [2] - 25:15, 26:5

INSERT [1] - 14:17

inside [1] - 20:21

insurance [2] - 7:10, 7:21

intending [2] - 14:4, 14:6

intent [1] - 14:3

interested [1] - 29:18

internet [1] - 8:23

irrelevant [7] - 24:21, 24:24, 25:11, 25:19, 25:24, 25:25, 26:11

IS [3] - 3:3, 3:6, 3:9

IT [3] - 3:3, 3:6, 3:9

items [1] - 16:12

## J

January [1] - 24:19

job [1] - 23:24

jurisdiction [1] - 13:4

## K

KAMARLEY [1] - 1:4

KARMARLEY [1] - 28:6

keep [1] - 15:7

kind [1] - 9:14

knowledge [2] - 23:10, 23:17

## L

lack [2] - 6:9, 6:15

land [1] - 13:2

last [1] - 19:24

Law [4] - 1:19, 5:23, 6:5, 6:13

law [8] - 7:15, 7:25, 13:6, 13:11, 13:18, 14:10, 14:14, 14:21

laws [1] - 13:13

lawsuit [2] - 7:2, 19:9

learn [1] - 13:8

least [2] - 19:18, 19:20

leave [1] - 14:12

legal [1] - 5:5

license [10] - 7:10, 7:21, 9:16, 9:21, 10:4, 10:18, 11:9, 14:2, 14:5, 14:8

life [1] - 26:10

lines [1] - 6:15

LISA [1] - 29:5

Lisa [3] - 1:21, 29:24, 29:24

look [2] - 20:16, 22:14

looked [7] - 8:19, 8:25, 15:25, 16:4, 16:15, 20:9, 20:10

looking [3] - 13:16, 16:20, 20:7

## M

mail [2] - 18:2, 18:9

mailing [1] - 18:3

main [1] - 16:19

manufacturers [1] - 17:16

mark [1] - 26:16

MARKED [1] - 28:10

Market [1] - 8:18

Marketplace [3] - 15:16, 16:3, 16:18

marketplace [1] - 16:11

marriage [1] - 29:17

matter [5] - 15:19, 24:22, 24:25, 25:11, 29:19

matters [1] - 10:14

mean [6] - 5:12, 10:16, 12:17, 17:22, 18:6, 18:20

means [3] - 7:11, 7:17, 8:18

mentioned [2] - 1:20, 8:21

microphone [1] - 6:18

might [3] - 16:7, 16:8, 16:20

mind [1] - 24:15

Mineola [1] - 2:10

misguide [1] - 13:21

misplaced [1] - 26:6

money [3] - 8:12, 8:13, 16:25

month [1] - 20:3

months [3] - 20:14, 21:25, 24:18

MR [11] - 4:7, 4:15, 9:6, 9:8, 9:10, 24:6, 24:8, 24:10, 24:15, 24:17, 26:15

multiple [2] - 8:19, 15:25

mumbled [1] - 6:19

## N

NADEL [5] - 1:4, 1:16, 2:3, 27:15, 28:5

Nadel [3] - 4:10, 4:16, 9:11

NADGIE [1] - 28:5

Nagie [1] - 4:10

NAGIE [4] - 1:4, 1:16, 2:3, 27:15

name [4] - 4:9, 4:16, 9:12, 22:16

name's [1] - 22:15

named [2] - 29:6, 29:8

names [1] - 22:8

narrow [2] - 21:25, 22:2

Nassau [10] - 2:9, 2:9, 4:18, 5:10, 5:14, 5:15, 5:24, 6:14

NASSAU [3] - 1:8, 1:8, 2:8

nature [2] - 5:9, 5:13

necessary [2] - 7:11, 7:22

need [7] - 9:16, 9:20, 10:3, 10:18, 11:9, 14:5, 14:7

needs [2] - 9:25, 11:10

NEW [1] - 1:2

New [11] - 1:22, 2:6, 2:10, 4:4, 6:3, 12:23, 13:4, 13:18, 14:9, 14:14, 18:12

night [1] - 25:21

non [1] - 4:23

non-verbal [1] - 4:23

Notary [1] - 1:21, 4:3

NOTARY [1] - 27:22

noted [1] - 19:17

nothing [1] - 12:2, 26:15

notices [1] - 18:10

notwithstanding [1] - 13:24

## O

oath [1] - 3:10

objection [3] - 19:14, 19:16, 26:6

objections [1] - 3:7

obstructing [2] - 26:12, 26:13

occurred [1] - 19:25

October [1] - 29:22

**OF** [2] - 1:2, 2:8
**OfferUp** [1] - 16:14
**OFFICE** [1] - 2:8
**officer** [1] - 3:10
**officer's** [1] - 6:20
**Old** [1] - 2:6
**one** [4] - 6:8, 7:19, 16:19, 24:10
**online** [1] - 8:25
**operating** [3] - 11:2, 11:12, 25:6
**Order** [1] - 1:19
**Origin** [4] - 22:6, 22:12, 22:18, 23:4
**outcome** [1] - 29:19
**outside** [1] - 26:10
**own** [6] - 10:23, 10:24, 11:10, 11:17, 12:6, 12:19

### P

**p.m** [1] - 1:14
**P.M** [1] - 26:18
**PAGE** [2] - 28:4, 28:11
**paid** [1] - 8:16
**pants** [1] - 21:22
**part** [1] - 12:9
**parties** [3] - 1:17, 3:4, 29:17
**party** [1] - 29:12
**personal** [13] - 5:20, 9:20, 9:25, 10:14, 10:23, 11:25, 12:19, 14:7, 22:23, 23:10, 23:17, 25:22, 26:9
**personally** [3] - 10:11, 15:3, 26:7
**pertaining** [1] - 6:9
**pertains** [1] - 6:8
**physically** [1] - 11:18
**pick** [1] - 8:12
**place** [3] - 1:20, 27:11, 29:8
**plaintiff** [1] - 5:16
**Plaintiff** [1] - 1:16

**PLAINTIFF** [1] - 2:3
**Plaintiffs** [1] - 1:5
**PLLC** [1] - 2:4
**Police** [6] - 2:9, 4:18, 5:10, 5:15, 5:24, 6:14
**POLICE** [1] - 1:9
**position** [1] - 9:15
**possession** [1] - 9:3
**Practice** [1] - 1:18
**previously** [1] - 4:20
**price** [1] - 8:5
**pro** [1] - 2:3
**problem** [1] - 24:5
**procedure** [1] - 6:11
**proceeded** [1] - 6:16
**profit** [9] - 10:20, 10:21, 11:5, 11:21, 14:4, 24:23, 25:6, 25:18, 26:3
**propelling** [2] - 12:16, 12:17
**property** [3] - 5:20, 18:24, 22:22
**protecting** [1] - 5:5
**provided** [1] - 8:14
**PUBLIC** [1] - 27:22
**Public** [2] - 1:21, 4:3
**public** [7] - 5:19, 5:25, 6:2, 6:6, 6:10, 6:13, 13:9
**pull** [1] - 13:14
**purchase** [8] - 8:5, 8:22, 8:24, 17:11, 19:23, 20:8, 20:11, 20:20
**purchased** [7] - 15:15, 15:21, 16:3, 16:17, 16:23, 20:3, 21:17
**purchaser** [1] - 22:8
**purpose** [1] - 9:22
**purposes** [2] - 11:2, 12:21
**pursuant** [1] - 1:18
**put** [2] - 14:13, 22:15

### Q

**QUATELA** [1] - 2:4
**questioning** [1] - 25:14
**QUESTIONS** [1] - 28:10
**questions** [7] - 4:24, 5:7, 9:7, 21:20, 23:14, 24:7, 24:11
**quoting** [1] - 13:22

### R

**Ramirez** [3] - 1:21, 29:24, 29:24
**RAMIREZ** [1] - 29:5
**rather** [1] - 4:22
**really** [1] - 22:3
**receipt** [4] - 17:11, 17:14, 17:18, 17:20
**receive** [6] - 6:23, 7:4, 14:15, 14:25, 17:10, 18:2
**received** [7] - 7:3, 17:13, 17:15, 17:18
**recollection** [1] - 13:17, 21:20
**record** [4] - 4:9, 4:12, 19:17, 29:15
**reference** [1] - 14:20
**referred** [1] - 6:2
**referring** [2] - 5:22, 6:7
**refresh** [1] - 13:16, 21:20
**regard** [1] - 19:12
**regarding** [2] - 7:6, 7:17
**registered** [4] - 9:21, 10:4, 10:19, 14:3
**registering** [1] - 25:3
**registration** [2] - 7:10, 7:21
**relevance** [1] - 19:13
**relevancy** [1] - 25:12
**relevant** [8] - 15:19, 15:20, 15:22, 19:6, 19:8, 19:16, 25:15, 26:5
**reliable** [2] - 18:5, 18:7

**remember** [16] - 8:5, 8:7, 8:8, 8:13, 16:24, 17:4, 17:5, 17:7, 17:15, 17:19, 20:4, 20:12, 20:15, 20:18, 20:24
**repeat** [2] - 6:17, 7:19
**rephrase** [1] - 5:3
**REPORTER** [2] - 4:8, 4:11
**represent** [1] - 9:13
**represented** [1] - 29:13
**request** [4] - 5:23, 6:10, 6:13, 7:4
**requested** [2] - 5:19, 15:7
**requesting** [1] - 6:20
**reserved** [1] - 3:7
**reside** [1] - 17:24
**residential** [1] - 17:23
**respective** [1] - 1:17, 3:4
**respond** [1] - 9:18
**responses** [1] - 4:22
**responsive** [1] - 6:16
**responsiveness** [1] - 6:9
**result** [1] - 6:24
**retrieve** [2] - 21:5, 21:9
**review** [1] - 15:2
**riding** [2] - 25:17, 25:20
**rights** [2] - 5:6, 7:6
**Road** [1] - 2:6
**road** [1] - 13:25
**roads** [1] - 12:24
**rode** [1] - 23:23
**route** [1] - 21:13
**Rules** [1] - 1:19
**ruling** [1] - 26:17
**RULINGS** [1] - 28:10

### S

**safe** [4] - 18:16, 18:17,

19:2, 19:21

**sale** [1] - 22:13

**scooter** [16] - 7:7, 7:12, 7:18, 7:25, 8:6, 8:9, 8:17, 8:22, 9:2, 15:15, 17:3, 19:23, 20:8, 20:11, 23:23, 25:4

**se** [1] - 2:3

**sealing** [1] - 3:4

**see** [2] - 21:6, 21:14

**seized** [1] - 5:21

**sell** [1] - 16:12

**seller** [1] - 22:11

**SENDROWITZ** [9] - 2:7, 9:8, 9:10, 24:6, 24:10, 24:15, 24:17, 26:15, 28:6

**Sendrowitz** [2] - 9:6, 9:13

**sense** [1] - 12:5

**sent** [1] - 5:23

**September** [1] - 1:14

**set** [2] - 24:9, 29:21

**shall** [1] - 3:7

**shared** [1] - 15:24

**short** [1] - 20:17

**shorts** [1] - 21:22

**should've** [1] - 23:25

**sign** [1] - 22:11

**signed** [2] - 3:9, 3:11

**site** [2] - 16:8, 16:9

**sites** [2] - 8:19, 15:25

**sitting** [1] - 13:15

**sometime** [1] - 20:5

**somewhere** [1] - 19:24

**source** [1] - 13:6

**specific** [3] - 13:10, 14:14, 14:21

**specifically** [1] - 20:15

**specified** [1] - 27:11

**spot** [2] - 14:22, 14:24

**stands** [1] - 6:4

**started** [1] - 19:9

**State** [8] - 1:22, 4:4, 12:24, 13:4, 13:18, 14:10, 14:14, 18:12

**state** [9] - 4:8, 4:11, 6:3, 18:19, 18:20, 18:21, 19:3, 19:5, 19:20

**statements** [1] - 4:24

**States** [1] - 18:22

**STATES** [1] - 1:2

**statute** [2] - 13:10, 14:21

**stenographer** [1] - 4:23

**stenographically** [1] - 29:11

**still** [2] - 12:23, 13:25

**STIPULATED** [3] - 3:3, 3:6, 3:9

**stolen** [2] - 9:3, 18:25

**straight** [1] - 22:4

**Street** [1] - 2:10

**submit** [1] - 22:18

**Subscribed** [1] - 27:18

**suing** [2] - 5:14, 19:10

**Suite** [1] - 2:6

**sworn** [6] - 3:9, 3:11, 4:3, 27:5, 27:18, 29:9

**T**

**terminology** [1] - 6:3

**testified** [4] - 4:5, 14:23, 16:2, 22:7

**testify** [1] - 27:5

**Testimony** [1] - 1:19

**testimony** [7] - 16:6, 16:16, 16:17, 27:6, 27:10, 29:10

**THE** [7] - 2:8, 4:8, 4:10, 4:11, 4:13, 5:8, 24:13

**title** [6] - 17:16, 22:19, 23:2, 23:3, 23:5, 25:4

**today** [2] - 8:21, 13:16

**took** [1] - 21:13

**TOWING** [2] - 1:8, 2:5

**Towing** [1] - 9:13

**traffic** [2] - 7:15, 7:25

**transcribe** [1] - 4:24

**transcribed** [1] - 29:12

**transcript** [7] - 14:13, 14:15, 14:25, 27:9, 29:7, 29:14

**travel** [7] - 7:11, 11:9, 12:10, 12:20, 13:2, 14:8, 25:22

**traveling** [7] - 7:17, 11:6, 11:8, 12:13, 12:25, 13:6, 25:23

**trial** [1] - 3:8

**true** [2] - 27:9, 29:14

**truth** [1] - 27:5

**trying** [5] - 10:24, 11:21, 21:15, 21:19, 22:2

**two** [2] - 13:11, 24:11

**type** [4] - 9:16, 10:5, 12:22, 17:11

**U**

**under** [2] - 13:3, 29:12

**UNITED** [1] - 1:2

**United** [1] - 18:22

**unless** [2] - 7:12, 7:22

**unwilling** [1] - 18:14

**up** [4] - 8:12, 9:7, 13:14, 24:12

**V**

**valid** [1] - 19:13

**vehicle** [14] - 7:14, 7:24, 8:24, 9:21, 10:4, 10:19, 11:2, 11:12, 12:23, 13:25, 14:2, 15:21, 25:7, 26:3

**verbal** [3] - 4:22, 4:23, 15:8

**verbiage** [1] - 12:20

**versus** [3] - 11:3, 12:20, 13:7

**VIA** [1] - 1:13

**video** [1] - 6:22

**VIDEOCONFERE**

**NCE** [1] - 1:13

**violated** [1] - 7:6

**virtually** [1] - 19:19

**W**

**waived** [1] - 3:5

**walk** [2] - 12:8, 21:15

**walked** [1] - 21:12

**warm** [1] - 21:21

**wearing** [1] - 21:22

**websites** [1] - 16:15

**weeks** [1] - 20:13

**West** [1] - 2:10

**WHEREOF** [1] - 29:21

**wide** [1] - 19:11

**winter** [1] - 20:19

**WITNESS** [5] - 4:10, 4:13, 5:8, 24:13, 29:21

**Witness** [1] - 4:2

**witness** [4] - 26:19, 29:6, 29:8, 29:15

**word** [2] - 12:12, 12:13

**worn** [1] - 6:21

**write** [3] - 15:3, 15:12, 15:13

**wrongfully** [1] - 5:21

**wrote** [1] - 22:8

**Y**

**year** [3] - 19:24, 20:5, 21:24

**YORK** [1] - 1:2

**York** [11] - 1:22, 2:6, 2:10, 4:4, 6:3, 12:24, 13:4, 13:19, 14:10, 14:14, 18:12

**yourself** [2] - 9:3, 14:6