UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KAMARLEY DORRELL, et anno.,

                              Plaintiffs,             **REPORT AND**

    -against-                                        **RECOMMENDATION**

                                                  23-CV-8471 (GRB)(SIL)
NASSAU COUNTY et al.,

                              Defendants.
-----------------------------------------------------------X

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this civil rights action arising under 42 U.S.C. § 1983 ("Section 1983"), on referral from the Honorable Gary R. Brown for Report and Recommendation, are: (1) Plaintiffs Kamarley Dorrell's ("Dorrell") and Nagie Nadal's ("Nadal") (together "Plaintiffs") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P"); (2) Defendant All County Towing & Autobody Inc.'s ("ACT") cross-motion for summary judgment; and (3) Plaintiffs' two motions to suppress exhibits J, K, and L submitted in support of ACT's motion. *See* Docket Entry ("DE"s) [71], [74], [75]-[78]. ACT seeks to dismiss the claims as to it concerning alleged violations of Plaintiffs' Fourth and Fourteenth Amendment rights. *See generally* ACT's Cross-Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 ("ACT Mot.") DE [71]. Defendant Nassau County (the "County") and the Nassau County Police Department ("NCPD"), (together with ACT, "Defendants") did not file an opposition to Plaintiffs' motion or move for summary judgment. For the reasons set forth herein, the Court respectfully recommends that Plaintiffs' motions be denied in their entirety and that ACT's motion be granted, and that ACT be dismissed from the case.

## I. BACKGROUND

### A. <u>Factual Background</u>

Plaintiffs' pleadings and motion papers are extremely difficult to follow. Accordingly, the Court reviewed pleadings outside of the motion papers to discern the facts, including the Complaint, *see* DE [1], and Plaintiffs' premotion submissions, *see* ("Pl. 56.1"), DE [56], and preliminary statement in their motion for summary judgment, *see* ("Pl. Mot."), DE [74], ACT's cross-motion for summary judgment, *see* ACT Mot., DE [71], and the admissible facts cited and relied upon therein.[1] Unless otherwise noted, these facts are not in dispute.

#### 1. <u>The Parties</u>

Dorrell and Nadal consider each other as spouses. *See* Dorrell's Deposition Transcript, ("Dorrell's Tr."), DE [71-11], 70. The County is a local municipal entity which operates its own police department. *See, e.g., Nunez v. Vill. of Rockville Ctr.,* 18-CV-4249(DRH)(SIL), 2022 WL 523753, at \*1 (E.D.N.Y. Feb. 22, 2022) (accepting undisputed fact that Nassau County is municipality with its own police department). ACT is a corporation with its principal place of business in Freeport, New York, and has a contract with Nassau County to provide towing services and storage facilities for the NCPD. *See* ACT's 56.1 Statement, ("ACT 56.1"), DE [71-13] ¶ 2.

---

[1] Plaintiffs are proceeding pro se and used a form to file their Complaint without paragraph numbers and their statement of facts is "Attachment 2," titled "Explanatory Statement." Accordingly, citations to the Complaint are to the page numbers Plaintiffs used for Attachment 2.

2. <u>The Incident at Issue</u>

This case turns on the impoundment of a moped co-owned by Plaintiffs. *See* Compl. at 1; Memorandum of Law in Support of Cross-Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 ("ACT Mem. Law"), DE [71-14] at 1. On August 28, 2023, between 9:00 pm and 10:00 pm NCPD Officers Christopher Costello ("Costello") and James Cocozzo ("Cocozzo," together the "Officers") trailed behind Dorrell in their patrol vehicle for approximately five minutes as he drove the moped on Nassau Expressway and Burnside Avenue in Inwood, Nassau County. *See* Pl. Mot. at 1; ACT 56.1 ¶3. The Officers stopped Dorrell because he was not wearing a helmet, lacked safety equipment for his eyes, traveled below the designated speed limit, and there was no visible license plate on the moped. *See* Deposition Transcript of Officer Cocozzo, Ex. F., ("Cocozzo's Tr.") DE [74-1], 78-79. Upon initiating the stop, Costello asked Dorrell if he had a license, as well as registration, and insurance for the moped. *Id*. at 22. Dorrell responded that he did not. *Id*. The Officers then confiscated the key to the moped, after which Dorrell provided his passport card. *Id*. at 22-23. Then, the Officers input Dorrell's information into the New York Statewide Police Information Network, commonly referred to as NYSPIN, and determined that his license was suspended. *Id*. at 68-69. During the stop, Costello looked inside of Dorrell's bookbag for safety purposes because Plaintiff Dorrell had reached into it. *See* Deposition Transcript of Officer Costello, Ex. F., ("Costello's Tr."), DE [74-1], 38.

Dorrell was threatened with arrest and Officer Cocozzo issued him ten tickets which Plaintiffs assert are fraudulent.[2]  Pl. Mot. at 1.

Ultimately, the Officers impounded Plaintiffs' moped due to its unregistered, uninsured, and uninspected status as well as Dorell's suspended license.  *See* Cocozzo's Tr. at 70.  The moped's status also resulted in the Officers' uncertainty as to whether Dorrell was the proper owner.  *Id*. at 70-71.  ACT was directed by the Officers to tow and hold the moped, which it did.  *See* ACT 56.1 ¶ 6; Impound Worksheet, DE [71-7].  As a result of his interactions with the Officers, Dorrell felt that he had been "racially profiled due to the fact that [he] was laughed at, spoken to aggressively, [and] searched without prior consent."  Compl. at 7.

B. **Procedural Background**

By way of Complaint dated November 14, 2023, Plaintiffs commenced this litigation in which they assert four primary causes of action pursuant to 42 U.S.C. § 1983 ("Section 1983"):  (i) unreasonable search and seizure in violation of the Fourth Amendment; (ii) deprivation of property by unreasonable seizure without due process in violation of the Fifth Amendment; (iii) deprivation of property by unreasonable seizure without due process in violation of the Fourteenth Amendment; and (iv) a

---

[2] Dorrell received tickets for the following infractions: (i) driving below the minimum posted speed limit in violation of New York State Vehicle and Traffic Law ("NYS VTL") § 1181B; (ii) unlicensed operator in violation of in violation of NYS VTL § 5091; (iii) unapproved/no face shield in violation of NYS VTL § 3817; (iv) unapproved/no protective helmet in violation of NYS VTL § 3816; (v) uninspected motor vehicle in violation of NYS VTL § 306B; (vi) aggravated unlicensed operation in violation of NYS VTL § 5111A; (vii) uninsured ATV in violation of NYS VTL § 22653; (viii) operating out of class in violation of NYS VTL § 5092; (ix) unregistered motorcycle in violation of NYS VTL § 4101; and (x) unregistered limited use vehicle in violation of NYS VTL § 22611.  *See* ACT 56.1 ¶ 4; Traffic Tickets, Ex. C, DE [71-4].

violation of the Thirteenth Amendment. *See generally* Compl.[3] On December 20, 2023, the County and NCPD filed an amended motion to dismiss for failure to state a claim which was marked withdrawn by the district judge and construed as a premotion conference request. *See* DE [4],[5]; December 21, 2023, Order. ACT answered the Complaint on February 5, 2024. *See* DE [14]. The NCPD and the County answered on March 1, 2024. *See* DE [24]. After the exchange of discovery, the parties initiated summary judgment motion practice on October 9, 2024, *see* DEs [56]-[60], [62] and were directed by the Court to file fully briefed motions by May 12, 2025, which Plaintiffs and ACT did. *See* DEs [71]-[73], [74]; February 25, 2025, Order.[4]

## II.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew

---

[3] Plaintiffs' claims are unclear. In addition to invoking their civil rights they allege violations of a variety of other statutes, *e.g.*, 18 U.S.C. § 35; 5 U.S.C. § 552; 26 U.S.C. § 7206; and NYS VTL § 511-b. *See* Compl. at 2-6. The Court interprets these alleged statutory violations as supporting Plaintiffs' civil rights claims rather than as separate causes of action. *See* Pl. 56.1 ¶ 20 "[The County] has been proven to commit 4th, 5th, and 13th Amendment violations against both plaintiffs.").

[4] Although the NCPD and the County did not file an opposition or cross motion to Plaintiffs' motion for summary judgment, they filed a letter motion for summary judgment requesting a premotion conference which this Court denied. *See* DE [59]; February 25, 2025, Order.

credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party"); *Artis v. Valls*, No. 10-CV-427(GTS)(TWD), 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## III. DISCUSSION[5]

### A. Summary Judgment Motions

The Court first addresses the parties' motions for summary judgment, Plaintiffs' as to the County and NCPD on the one hand, and ACT's as to Plaintiffs on

---

[5] It appears from the docket that ACT did not serve Plaintiffs with the Notice to Pro Se Litigant Who Opposes a Summary Judgment pursuant to Local Civil Rule 56.2. The purpose of the notice is to ensure that a pro se party understands the burdens when opposing a motion for summary judgment, including submitting evidence. *See*, *e.g.*, *White v. Roosevelt Union Sch. Dist. Bd. of Educ.*, No. 15-CV-1035(JS)(JMW), 2023 WL 4420117, at *1 (E.D.N.Y. July 10, 2023); *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (setting forth the standard). This failure is grounds for denying a motion unless the Court can discern from the record that the pro se litigant understood his obligations on summary judgment. *White*, 2023 WL 4420117, at *1. Here, it is clear from the record

the other.  Because the legal standards are the same as to each motion, the motions are treated together.

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under Section 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983); *see Dubin v. Cnty. of Nassau*, 277 F. Supp. 3d 366, 384 (E.D.N.Y. 2017) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

Relevant to ACT's motion, Section 1983 pleadings must allege that the Plaintiffs were injured by a state actor or a private party acting under color of state law.  *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002).  For liability

---

the Plaintiffs understood their summary judgment obligations.  In fact, they filed their own motion for summary judgment with exhibits attached, along with a statement of uncontested facts pursuant to Local Civil Rule 56.1.  Accordingly, the Court recommends that ACT's motion for summary judgment be addressed on the merits.

to attach to a private party depends on whether that party exercises "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Kia P. v. McIntyre*, 235 F.3d 749, 755-56 (2d Cir. 2000).

### 1. Fourth Amendment Claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." *Gem Fin. Serv., Inc. v. City of New York*, 298 F. Supp. 3d 464, 479 (E.D.N.Y. 2018) (citing U.S. Const. amend. IV); *see Soldal v. Cook Cnty.,* 506 U.S. 56, 68, 113 S. Ct. 538, 547 (1992) (observing that the Fourth Amendment protects against any government interference with personal property, even if a police officer has merely found that property in public). "A seizure occurs when the Government interferes in some meaningful way with the individual's possession of property." *United States v. Ganias*, 755 F.3d 125, 133 (2d Cir. 2014) (citations omitted); *see United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656 (1984) ("A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."). As a result, warrantless seizures of personal property are unreasonable within the meaning of the Fourth Amendment, and are therefore invalid, unless an exception to the warrant requirement applies. *United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015). Exceptions to the warrant requirement include, *inter alia*: (i) whether the property is contraband, evidence of a crime, or otherwise subject to forfeiture; or (ii) other exigent circumstances, such as a danger

to society. *See Harrell v. City of New York*, 138 F. Supp. 3d 479, 490-91 (S.D.N.Y. 2015).

There is also an exception to the warrant requirement for "what the Supreme Court has called community caretaking functions." *VW Credit Leasing LTD. v. Runway Towing Corp.*, 757 F. Supp. 3d 271, 284-85 (E.D.N.Y. 2024) (quoting *Barnes v. City of New York*, No. 13-CV-7283 (GBD)(JLC), 2015 WL 4076007, at *7 (S.D.N.Y. July 2, 2015)). This exception provides that, even without a warrant, police officers may "seize and remove from the streets automobiles in the interests of public safety and as part of their community caretaking functions—an authority that is beyond reasonable challenge." *United States v. Lyle*, 919 F.3d 716, 728 (2d Cir. 2019). "[U]nder this community caretaking exception . . . , police officers may exercise their discretion in deciding whether to impound a vehicle," and "whether a decision to impound is reasonable under the Fourth Amendment is based on all the facts and circumstances of a given case." *Id.* at 731 (internal quotation omitted); *see South Dakota v. Opperman*, 428 U.S. 364, 368, 96 S. Ct. 3092, 3907 (1976) (observing that the Supreme Court has long recognized that police may impound vehicles "[i]n the interests of public safety and as part of what the Court has called 'community caretaking functions'") (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 2528 (1973)); *Vasquez v. Yadali*, No. 16-CV-895(NSR), 2020 WL 1082786, at *7 (S.D.N.Y. Mar. 5, 2020) ("[I]t is reasonable for police officers to impound [a] vehicle under [] community care functions where, among other things, the vehicle would otherwise . . . threaten public safety.").

Moreover, even where the government validly seizes property, it has an "ultimate obligation to return it" if the property is not contraband. *City of W. Covina v. Perkins*, 525 U.S. 234, 240, 119 S. Ct. 678, 681 (1999); *Gomez-Arboleda v. United States*, No. 93 Civ. 4757(JFK), 1993 WL 512838, at *2 (S.D.N.Y. Dec. 9, 1993) ("[I]t is the general practice of the Government to return seized property, other than contraband . . ."). As a result, "[i]f the government . . . cannot establish probable cause for the initial seizure or offer post-seizure evidence to justify continued impoundment, retention of the seized property runs afoul of the Fourth Amendment." *Krimstock v. Kelly*, 306 F.3d 40, 50 (2d Cir. 2002); *Santander Consumer USA, Inc. v. Cnty. of Suffolk*, No. 20-CV-2656(JS)(AKT), 2021 WL 4480574, at *11 (E.D.N.Y. Sep. 30, 2021).

Examples of lawful impoundment of a vehicle include: (1) where a driver is operating a vehicle with a suspended license to avoid leaving the vehicle unattended for an unknown amount of time, *King v. Creed*, No. 14-CV-165(LEK)(TWD), 2017 WL 6389708, at *3 (N.D.N.Y. Dec. 13, 2017); *see United States v. Colon*, No. 10 Cr. 498(RPP), 2011 WL 569874, at *14 (S.D.N.Y. Feb 8, 2011), and (2) where an automobile "violate[s] parking ordinances and . . . thereby jeopardize[s] both the public safety and the efficient movement of vehicular traffic." *Bowser v. City of New York*, No. 23-CV-6183(DG)(VMS), 2025 WL 1707174, at *8 (E.D.N.Y. Feb. 25, 2025).

Where, as here, "the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle," and "it is necessary to remove the vehicle from a[ ] public location," "impoundment may be proper under the community

caretaking doctrine." *VW Credit Leasing LTD.*, 757 F. Supp. 3d at 285 (quoting *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005)); *United States v. Fabian*, No. 16-CR-131(DLI), 2019 WL 3578226, at *6 (E.D.N.Y. Aug. 6, 2019) ("[W]hether or not [the vehicle] was parked legally is irrelevant as the community caretaking function still applies. As noted above, the Jeep did not have proper plates . . . . It was appropriate to impound [the vehicles] following Defendant's arrest and not leave them on the street for an indefinite period, as a reasonable exercise of law enforcement's 'community caretaking' responsibilities."). Similarly, "a car that is legally parked in a public place, such as a street or parking lot, but that will be inaccessible to its owner for an extended period – as a result of an arrest, for example – may also be impounded in order to safeguard the vehicle if such a step is reasonable under the circumstances." *United States v. Barrios*, No. 07 Cr. 658 (DLC), 2007 WL 3256945, at *2 (S.D.N.Y. Nov. 1, 2007).

Applying these standards, Plaintiffs are not entitled to summary judgment. It appears from the evidence that Dorrell was not operating the vehicle with a valid license, rendering the moped subject to impoundment under the community caretaker exception. *See VW Credit Leasing LTD.*, 757 F. Supp. 3d at 285 ("Where, as here, the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle, and it is necessary to remove the vehicle from a public location, impoundment may be proper under the community caretaking doctrine.") (internal quotation and citation omitted). To this end, impounding a vehicle that is not authorized to operate is undoubtedly a reasonable measure to ensure the public's

safety. *Vasquez*, 2020 WL 1082786, at *7; *see Opperman*, 428 U.S. at 368, 96 S. Ct. at 3907. Accordingly, Plaintiffs' motion for summary judgment with respect to the seizure of the moped should be denied.

Plaintiffs further contend that their Fourth Amendment rights were violated because the Officers conducted an unconstitutional search of Dorrell's bag. *See* Compl. at 1. The issue turns on the reasonableness of the search. This issue involves a quintessential question of fact that makes summary judgment in Plaintiffs' favor on this claim as to the County inappropriate. *See Allen v. Schiff*, 908 F. Supp. 2d 451, 461 (S.D.N.Y. 2012), *aff'd*, 586 Fed. Appx. 759 (2d Cir. 2014) ("Although the reasonableness of a search is a matter of law, the character and manner of the search is a matter of fact."); *Bulgari v. Bulgari*, No. 22 Civ. 5072, 2024 WL 4345580, at *5 (S.D.N.Y. Sept. 30, 2024)("Even where the facts are undisputed, the issue of whether conduct is reasonable is ordinarily a question of fact for the jury."). Accordingly, the Court recommends that Plaintiffs' motion for summary judgment as to their Fourth Amendment cause of action be denied.

ACT's motion for summary judgment as to this claim, however, should be granted. The seizure leading to impoundment was conducted by the County and NCPD. The Officers, not ACT, seized Plaintiffs' moped after determining that Dorrell had a suspended license, and the vehicle was uninsured, unregistered, and uninspected. *See* Cocozzo Tr. at 70. Further, Costello looked into the bookbag because he needed to check for officer safety and weapons as a result of Dorrell placing his hand in the bag. *See* Costello Tr. at 38.

12

ACT's role in this regard, conducting the physical towing and storage did nothing to contribute to the issuance of the underlying tickets which led to the impoundment and search. Its conduct was ministerial and therefore liability on this cause of action is unwarranted as a matter of law. Accordingly, the Court respectfully recommends that Plaintiffs' motion for summary judgment on their Fourth Amendment claims be denied and that ACT's motion on this cause of action be granted.

### 2. Due Process Claims

Plaintiffs also claim that their due process rights were violated under the Fifth and Fourteenth Amendments. Because the Fourteenth Amendment due process clause is the one properly invoked against a municipality, the Court devotes its analysis accordingly.[6] The due process clause of the Fourteenth Amendment requires that individuals "receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48, 114 S. Ct. 492, 498 (1993); *Connecticut. v. Doehr*, 501 U.S. 1, 12, 111 S. Ct. 2105, 2113 (1991) ("[E]ven the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are

---

[6] To the extent the Plaintiffs' papers could be read to invoke the Fifth Amendment Takings Clause, providing that "private property [shall not] be taken for public use, without just compensation," *Comty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 550 (2d Cir. 2022), the claim would fail as a matter of law because there appears to be no allegation or evidence in the record that the moped was taken for public use. *See, e.g., Sullivan v. Maha*, 834 F. App'x 619, 621 (2d Cir. 2020) (holding that the plaintiff could not establish a claim where his pistol permit was suspended and his guns were confiscated because he failed to adduce evidence that the firearms were taking for public use); *Brown v. Town of Amherst*, 23-CV-993(EAW), 2024 WL 4308310, at *13 (W.D.N.Y. Sept. 26, 2024) (dismissing claim where property was not taken for "public use").

sufficient to merit due process protection."). In evaluating whether a deprivation violates the Fourteenth Amendment, courts "identify the property interest involved" and "whether the plaintiff received constitutionally adequate process in the course of the deprivation." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005) (citing *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 212 (2d Cir. 2003)). The denial of possession to an owner is a deprivation of property. *See Alexandre v. Cortes*, 140 F.3d 406, 410-11 (2d Cir. 1998). To this end, even "a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." *HVT, Inc. v. Port Auth. of N.Y. & N.J.*, No. 15-CV-5867(MKB)(VMS), 2018 WL 3134414, at *7 (E.D.N.Y. Feb. 15, 2018) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 85, 92 S. Ct. 1983, 1997 (1972)).

Ordinarily, "'the Constitution requires . . . a hearing before the State deprives a person of liberty or property.'" *Ferreira v. Town of E. Hampton*, 56 F. Supp. 3d 211, 225 (E.D.N.Y. 2014) (quoting *New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 115 (2d Cir. 2006)). "In certain circumstances, [however,] the lack of such pre-deprivation process will not offend the constitutional guarantee of due process, provided there is sufficient post-deprivation process." *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999). Accordingly, "this requirement does not necessarily mean plaintiffs are entitled to a full administrative hearing." *City Line Auto Mall, Inc. v. Mintz*, No. 05-CV-5524(ERK)(VVP), 2006 WL 8439742, at *3 (E.D.N.Y. Oct. 25, 2006) (citing *Dixon v. Love*, 431 U.S. 105, 115, 97 S. Ct. 1723, 1729 (1977)). "'Either the necessity of quick action by the State or the impracticality of

providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process.'" *Catanzaro*, 188 F.3d at 61 (quoting *Parratt v. Taylor*, 451 U.S. 527, 539, 101 S. Ct. 1908, 1915 (1981)).  Accordingly, "[d]ue process does not, in all cases, require a hearing before the state interferes with a protected interest, so long as 'some form of hearing is [provided] before an individual is finally deprived of [the] property interest.'" *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (*quoting Brody v. Vill. of Port Chester*, 434 F.3d 121, 135 (2d Cir. 2005)).

In evaluating the constitutional adequacy of due process procedures, Courts consider the framework outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976), and balance:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Santander Consumer USA, Inc.*, 2021 WL 4480574, at *8 (citing *Mathews*, 424 U.S. at 335, 96 S. Ct. at 903); *see Nnebe*, 644 F.3d at 158 ("*Mathews* is the test for both when a hearing is required (*i.e.*, pre- or post-deprivation) and what kind of procedure is due[.]'") (quoting *Brody*, 434 F.3d at 135).

It does not appear that there is any dispute that the moped was impounded by the Officers and so the first *Mathews* factor is satisfied.  *See Krimstock v. Kelly*, 464 F.3d 246 253 (2d Cir. 2006) (noting the "particular importance of motor vehicles . . .

15

as a mode of transportation and, for some, the means to earn a livelihood") (citation omitted); *Mercedes-Benz Fin. Servs. USA, LLC v. City of New York*, 770 F. Supp. 3d 643, 658 (S.D.N.Y. 2025) (holding that the plaintiff had a property interest in a vehicle impounded pursuant to a scofflaw policy). Questions of fact exist, however, with respect to the second and third *Mathews* factors. The second *Mathews* factor requires analysis of "the risk of an erroneous deprivation of [a property] interest through the procedures used." *City Line Auto Mall, Inc.*, 2006 WL 8439742, at *4 (quoting *Krimstock*, 306 F.3d at 62). The third *Mathews* factor "considers the Government's interest" in the deprivation of liberty or property. *Diaz v. Genalo*, No. 22-CV-3063(VSB)(BCM), 2024 WL 4124756, at *5 (S.D.N.Y. Sep. 9, 2024); *see Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 237 (E.D.N.Y. 2019) ("The third *Mathews* factor inquires as to the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.") (internal quotation and alteration omitted).

Applying these standards, summary judgment is inappropriate as to whether the County and NCPD violated Plaintiffs' Fourteenth Amendment rights by impounding the moped without a formal hearing. Plaintiffs have not submitted evidence that the Court can rely on as a matter of law to conclude that the risk of an erroneous deprivation, when compared with a substitute process weighs in favor of finding a civil rights violation. Similarly, there is no evidence that any substitute process would not create excess burdens on the County. In fact, Plaintiffs do not suggest that a reasonable alternate process exists. Accordingly, the Court

recommends denying Plaintiffs summary judgment as to their due process claim pursuant to the Fourteenth Amendment.

ACT's motion for summary judgment however, as to this claim should also be granted. Plaintiffs do not allege, and there are no facts that would support a claim, that ACT had the ability to provide Plaintiffs with due process to challenge the impoundment or the underlying tickets. *See Cloister E., Inc. v. N.Y. State Liquor Auth.*, 563 F. Supp. 3d 90, 106 (S.D.N.Y. 2021) (internal citations omitted) ("Individual [d]efendants cannot be held legally accountable for the alleged process failure if they did not have the power to provide process to the plaintiff") (internal quotation marks omitted). Indeed, courts in other districts to address these types of claims against towing companies have concluded that they are untenable. *See Doney v. Hammond City*, 15-CV-21123, 2016 WL 5072409, at *3 (E.D. La. Sept. 9, 2016) (rejecting due process claim against towing company); *Shipley v. B.& F Towing Co.*, 04-CV-1530(JJF), 2006 WL 1652787, at *3-4 (D. Del. June 13, 2006) (dismissing due process claims against towing company); *Beverly Hills v. Chicago Ins. Co.*, 668 F. Supp. 1402, 1408 (C.D. Cal. 1987) (the towing company could not provide due process relief); *Mays v. Scranton City Police Dep't*, 503 F. Supp. 1255, 1264 (M.D. Pa. 1980) (the towing company is not in a position to provide a process for redress). Accordingly, the Court recommends that Plaintiffs' Fourteenth Amendment due process claim against ACT fails as a matter of law and summary judgment should be granted in favor of the towing company.

### 3. Thirteenth Amendment Claim

Finally, the Court addresses Plaintiffs' Thirteenth Amendment claim, which appears to be asserted only against the County. "To sustain a claim under the Thirteenth Amendment, a plaintiff must 'demonstrate he has been subjected to compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *Jones v. City Sch. Dist. of New Rochelle*, 695 F. Supp. 2d 136, 148 (S.D.N.Y. 2010) (citing *Ford v. Nassau County Executive*, 41 F.Supp.2d 392, 400-01 (E.D.N.Y. 1999)). The Court recognizes that Dorrell felt racially profiled during his encounter with the County because the Officers laughed at him and spoke to him aggressively. Compl. at 7. Nevertheless, a Thirteenth Amendment claim is not an appropriate avenue to sustain a cause of action arising from these pleadings because a traffic stop or arrest, even when conducted inappropriately or unprofessionally, is not viewed in the law as amounting to the realities of slavery endured by Black Americans. *See Williams v. Savory*, 87 F. Supp. 3d 437, 452-53 (S.D.N.Y. 2015) (holding that summary judgment for defendants is merited on plaintiff's Thirteenth Amendment claim where "ACS coerced her to attend a parenting course . . . and court hearings, and forced her to undergo drug testing, a mental health examination, and counseling sessions."); *Alexander v. Schenk*, 118 F. Supp. 2d 298, 302 (N.D.N.Y. 2000) (granting summary judgment to Defendants on Plaintiff's Thirteenth Amendment claim where plaintiff, an incarcerated person, is required to work for minimal compensation while in prison.). Accordingly, the Court

recommends denying Plaintiffs' request for summary judgment as to their Thirteenth Amendment cause of action.

## B. Plaintiffs' Motions to Suppress

In addition to moving for summary judgment, Plaintiffs seek to suppress ACT's exhibits J, K, and L submitted in support of its cross-motion for summary judgment. *See* DE [75], [77]. Exhibit J is Dorrell's deposition transcript. *See* DE [71-11]. Exhibit K is Nadal's deposition transcript. *See* DE [71-12]. Exhibit L is a printout from the Department of State website which is publicly available. *See* DE [73-1]. The main thrust of the motions is that Plaintiffs did not have an opportunity to review their transcripts prior to summary judgment motion practice, and the printout was not produced during discovery. *See* DE [77] at 2. The Court recommends that the motions be denied.

> Rule 30(e)(1) by its terms does not state that the deponent must be given an opportunity to review and correct the transcript before a party submits that transcript to the Court in support of a summary judgment motion; it simply states that a party must be allowed 30 days to review the transcript and sign a statement listing any changes thereto and the reasons for making them.

*Tycoons Worldwide Grp. (Thailand) Pub. Co., Ltd. v. JBL Supply Inc.*, 721 F. Supp. 2d 194, 200 (S.D.N.Y. 2010) (denying Defendants' motion to suppress a deposition transcript where they argued that the deponent was not provided timely review of the transcript.). Accordingly, the Court recommends denying Plaintiffs' motions as to Dorrell's and Nadal's deposition transcripts, Exhibits J and K. Further, Exhibit L is a publicly available record and thus, it should not be excluded from the Court's review on summary judgment. *See* DE [76] at 2; *Bd. of Educ. of City Sch. Dist. of City*

*of New York v. Y.F. by and through C.F.*, No. 23-CV-8883(VEC)(JW), 2025 WL 357730, at \*3 (S.D.N.Y. Jan. 31, 2025) ("[I]t is well established that discovery need not be required of documents of public record which are equally accessible to all parties.") (internal citation omitted). Accordingly, the Court recommends that Plaintiffs' motions to suppress be denied.

## IV. CONCLUSION

For the reasons set forth herein, the Court recommends that Plaintiffs' motions for summary judgment and to suppress be denied in their entirety and that ACT's cross-motion for summary judgment be granted in full and that ACT be dismissed from this case. Plaintiffs and the County are directed to review Judge Brown's individual rules concerning the filing of pretrial orders, meet and confer about the same, and file a proposed pretrial order by February 27, 2026. Final Pretrial Conference: March 12, 2026, at 11:45am.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on Defendant by electronic filing on the date below. Defendant is directed to serve a copy of it on Plaintiffs via first-class mail and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days, that is by February 5, 2026. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within the specified period waives the right to appeal the District Court's order. *See Ferrer v. Woliver*, No. 05-

3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); Beverly v. Walker, 118 F.3d 900, 902 (2d Cir. 1997);  *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
       January 22, 2026

   /s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge